IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SCOTTIE LEE GRAVES, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MIKE ANDREWS, )<br>JULIAN COUCH, )<br>GODWIN MENSAH, and )<br>PATRICIA BUTLER, )<br>)<br>Defendants. )<br>_____ ) | 1:12CV154 |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a number of Motions filed by Plaintiff Scottie Lee Graves ("Plaintiff") and Defendants Mike Andrews ("Defendant Andrews"), Julian Couch ("Defendant Couch"), Godwin Mensah ("Defendant Mensah"), and Patricia Butler ("Defendant Butler") (collectively, "Defendants"). Specifically, Plaintiff has filed a Motion for the Appointment of Counsel [Doc. #17] and five (5) Motions [Doc. #29, #30, #31, #32, & #35] seeking to "recall" an unspecified judgment, reopen the above-captioned case, order the Clerk's Office to mail Plaintiff copies of all filings in the case, appoint counsel, and/or extend the time for Plaintiff to respond to certain Motions to Dismiss filed by Defendants. In addition, Defendants' Motions to Dismiss [Doc. #20, #22, #26, & #55] are also before the Court at this time. The Court will address the Motions in turn.
Case 1:12-cv-00154-JAB-JLW   Document 64   Filed 03/14/13   Page 1 of 19

I.   PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL [Doc. #17]

"The Constitution does not compel the appointment of counsel in civil cases." Lowery v. Bennett, No. 11-6425, 2012 WL 3218006, at *6 (4th Cir. Aug. 9, 2012). However, the Court may, in its discretion, "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968) (noting that appointment of counsel under section 1915 "is a privilege and not a right" and is "a matter within the discretion of the District Court"). Courts should exercise their discretion in this regard only where the plaintiff has shown "exceptional circumstances." Lowery, 2012 WL 3218006, at *6. "Whether the circumstances are exceptional depends on 'the type and complexity of the case, and the abilities of the individuals bringing it.'" Id. (quoting Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989)). "If it is apparent to the district court that a *pro se* litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978).

In the present case, Plaintiff filed his Complaint [Doc. #2] on February 14, 2012, alleging claims against Defendants for medical negligence and constitutional violations pursuant to 42 U.S.C. § 1983, based on a leg injury allegedly suffered while Plaintiff was incarcerated in the Durham County Detention Center. In support of his Motion for the Appointment of Counsel, Plaintiff contends that he had surgery on his leg following his release from the Durham County Detention Center which has limited his mobility and left him in severe pain. In addition,

Plaintiff contends that his physical therapy "[dis]ables him from adequately representing himself." (Pl.'s Mot. at 1, [Doc. #17]). Plaintiff also reiterates his request for the appointment of counsel throughout subsequent filings in this case, as discussed below, noting therein that he was arrested on June 14, 2012, and has had difficulty conducting research and accessing legal documents while incarcerated. Plaintiff further contends that this case is too complex for him to litigate on his own. Defendants Butler and Mensah have filed a Response opposing Plaintiff's Motion to appoint counsel, contending that Plaintiff has not shown "exceptional circumstances" under which the Court should exercise its discretion to appoint counsel in this case. In addition, Defendants Butler and Mensah contend that "plaintiff's pleadings and other filings suggest that he is competent to represent himself in this matter." (Defs.' Resp. at 2, [Doc. #18]).

Based on the information presently before the Court, the Court finds that Plaintiff has failed to show exceptional circumstances warranting appointment of counsel in this case. In so finding, the Court notes that Plaintiff has demonstrated an ability to proceed thus far by filing his Complaint and several Motions before this Court.[1] In addition, Plaintiff has failed to demonstrate how his purported physical limitation and/or his need for physical therapy has or

---

[1] The Court also notes that Plaintiff previously filed the same claims against the same Defendants in case number 1:11-CV-1109. That case was dismissed without prejudice to Plaintiff refiling his complaint on the proper forms. In that regard, the Court notes that by filing the Complaint in the present case, Plaintiff has demonstrated his ability to comply with a Court Order without the assistance of counsel. Furthermore, the Court notes that Plaintiff has filed several other cases before this and other Federal District Courts, including cases alleging constitutional violations pursuant to 42 U.S.C. § 1983, thereby highlighting his ability to proceed at this time without the assistance of counsel.

will hinder or prevent him from proceeding without counsel. Furthermore, "the effect of [Plaintiff's] imprisonment on his ability to litigate his case [is] insufficiently 'exceptional' to merit appointment of counsel." Reeves v. Ransom, No. 1:10CV56, 2011 WL 4549144, at *8 (M.D.N.C. Sept. 29, 2011) (unpublished). Moreover, as discussed in more detail below with regard to Defendants' Motions to Dismiss, it is not "apparent" to the Court that Plaintiff either has stated a colorable claim in this case or that he lacks the capacity to present any such claim. Therefore, the Court will deny Plaintiff's Motion for the Appointment of Counsel [Doc. #17].

II.   PLAINTIFF'S OTHER MOTIONS FOR RELIEF [Doc. #29, #30, #31, #32, & #35]

In addition to his Motion for the Appointment of Counsel, Plaintiff has filed a number of other Motions for the Court's review, all of which relate in part to certain of Defendants' Motions to Dismiss. In that regard, the Court notes that Defendants filed various Motions to Dismiss in April, May, and June of 2012, the substance of which will be discussed in detail below.[2] However, Plaintiff did not, thereafter, file a Response to any Motion to Dismiss within

---

[2] Specifically, on April 23, 2012, Defendants Andrews and Couch filed a Motion to Dismiss [Doc. #20] Plaintiff's Complaint pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure. On May 7, 2012, Defendants Butler and Mensah filed a Motion to Dismiss [Doc. #22] Plaintiff's Complaint pursuant to Rule 12(b)(6). On June 1, 2012, Defendants Butler and Mensah filed a Second Motion to Dismiss [Doc. #26] any medical malpractice claim brought by Plaintiff under North Carolina law. In addition, Defendants Butler and Mensah filed a Motion to Dismiss [Doc. #55] addressing what they perceived to be an amended complaint filed by Plaintiff on December 14, 2012. However, each of Plaintiff's Motions discussed herein was filed prior to the Motion to Dismiss found in Document 55. As such, the Motion to Dismiss found in Document 55 is not relevant to the discussion of Plaintiff's Motions at this time.

4

the time period permitted under the Local Rules of this District.[3]  See L.R. 7.3(f) ("The respondent, if opposing a motion, shall file a response, including a brief, within 21 days after service of the motion.").  Rather, on August 9, 2012, over three and a half months after Defendants Andrews and Couch filed the first Motion to Dismiss at issue in this case, Plaintiff began filing a series of nearly identical Motions [Doc. #29, #30, #31, #32, & #35], three of which were filed *ex parte*, asking the Court to "recall" an unspecified judgment, reopen the case, order the Clerk's Office to mail Plaintiff copies of all filings in the case, appoint Plaintiff counsel, and/or extend the time for Plaintiff to respond to Defendants' Motions to Dismiss.

In support of Plaintiff's request for an extension of time to respond to Defendants' Motions to Dismiss, Plaintiff contends, much as he does with regard to his Motion for the Appointment of Counsel, that he had to undergo surgery and physical therapy for the leg injury underlying the allegations in his Complaint and has, therefore, been unable to "keep up with" this case.  (Pl.'s Mot. at 3, [Doc. #29]).  In addition, Plaintiff contends, as noted above, that he was arrested on June 14, 2012, and remains incarcerated to date.  Therefore, Plaintiff contends that his incarceration has also prevented Plaintiff from providing any response to Defendants' Motions to Dismiss.  As such, Plaintiff contends that he has shown excusable neglect for failing to timely respond to Defendants' Motions to Dismiss or otherwise proceed with the case.

In contrast, Defendants contend that Plaintiff has failed to show excusable neglect and,

---

[3] The Responses to the Motion to Dismiss filed by Defendants Andrews and Couch and the first Motion to Dismiss filed by Defendants Butler and Mensah were due by May 17, 2012, and June 1, 2012, respectively.  The Response to the Second Motion to Dismiss filed by Defendants Butler and Mensah was due by June 25, 2012.

5

therefore, has waived his right to respond to any of the Motions to Dismiss pursuant to the Local Rules of this District. See L.R. 7.3(k) ("The failure to file a brief or response within the time specified in this rule shall constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect."). Specifically, Defendants contend that Plaintiff's attendance at or need for physical therapy is not sufficient to create excusable neglect or any other basis for extending Plaintiff's time to respond. Defendants further contend that Plaintiff was properly served with each of the relevant Motions to Dismiss [Doc. #20, #22, & #26] at his home address prior to his arrest, and that the time to respond to such Motions, with the exception of the Second Motion to Dismiss filed by Defendants Butler and Mensah,[4] expired prior to Plaintiff's arrest. Therefore, Defendants contend that Plaintiff's arrest and present incarceration do not provide any valid excuse for failing to timely respond in this case. Defendants further contend that Plaintiff has not shown that the address to which Defendants' Motions to Dismiss were originally mailed changed at any time prior to Plaintiff's arrest, such that Plaintiff would not have received the Motions to Dismiss at or near the time they were filed. In addition, Defendants Andrews and Couch contend that Plaintiff has not shown good faith in seeking an extension of time because he has failed to attach any proposed Response to his Motions.

---

[4] As noted above, the Second Motion to Dismiss filed by Defendants Butler and Mensah [Doc. #26] was filed with this Court and mailed to Plaintiff's home address on June 1, 2012, prior to Plaintiff's arrest. As such, even though the time to respond to that Motion did not expire until June 25, 2012, after Plaintiff's arrest, Plaintiff would have received notice of Defendants' Motion at his mailing address prior to his arrest. In any event, Plaintiff did not move for an extension of time to respond until August 9, 2012, over two months after the Second Motion to Dismiss was filed.

Based on the information presently before the Court, the Court will deny each of Plaintiff's Motions, as set forth herein. Specifically, to the extent that Plaintiff asks the Court to "recall" a previously-entered judgment and/or reopen the case, the Court notes that it has not entered any Order or Judgment in this case that would have the effect of closing the case or otherwise denying Plaintiff the opportunity to present his claims herein. In other words, this case has at all times remained open and is presently proceeding through litigation. Therefore, the Court will deny Plaintiff's Motions in that regard. In addition, to the extent that Plaintiff reiterates, or raises anew, a request for the appointment of counsel, the Court again denies that request for the reasons stated above in Part I of this Memorandum Opinion and Order. Furthermore, to the extent that Plaintiff requests an extension of time to respond to Defendants' various Motions to Dismiss, the Court finds that Plaintiff has not shown excusable neglect sufficient to permit such an extension. In so finding, the Court notes that Plaintiff was served at his home address with each of Defendants' Motions to Dismiss prior to his arrest, and Plaintiff does not contend that such address was incorrect at the time the Motions to Dismiss were mailed. Furthermore, excluding the Second Motion to Dismiss filed by Defendants Butler and Mensah, the time to respond to Defendants' Motions to Dismiss expired prior to Plaintiff's arrest. Therefore, Plaintiff's arrest and present incarceration do not provide a basis for excusable neglect in this case. Furthermore, with regard to the time period prior to Plaintiff's arrest, Plaintiff's contention that he had to attend physical therapy does not sufficiently explain why he was unable to respond to Defendants' Motions to Dismiss. In fact, Plaintiff specifically states that he rode to the Greensboro courthouse with his wife on at least one occasion while

7

he was still on crutches. Therefore, it would appear that Plaintiff had the ability to review and respond to Defendants' Motions to Dismiss even during the period directly after his surgery. Moreover, although Plaintiff has now taken the time and effort to file the present Motions before the Court, Plaintiff has failed to attach to any Motion a proposed Response or other document that could be construed as a Response. Therefore, the Court will deny Plaintiff's request for an extension of time to file a Response to any of Defendants' Motions to Dismiss. As such, based on the foregoing, the Court will deny each of Plaintiff's Motions for various relief [Doc. #29, #30, #31, #32, & #35].

III. DEFENDANTS' MOTIONS TO DISMISS

As noted above, Plaintiff filed the present Complaint alleging claims against "Defendants" for medical negligence and constitutional violations pursuant to 42 U.S.C. § 1983, based on an injury allegedly suffered and/or exacerbated while Plaintiff was incarcerated in the Durham County Detention Center. Specifically, Plaintiff alleges that upon intake at the Durham County Detention Center, he advised certain unnamed medical personnel of a preexisting right leg injury and was thereafter ordered to be assigned to a low bunk and to be given an extra blanket to elevate his right leg. Plaintiff further alleges that he was "wrongfully/negligently" assigned to a top tier cell in violation of a medical order. Plaintiff further alleges that on November 17, 2011, his right leg "gave away" as he was climbing the stairs and he subsequently fell down the stairs, re-injuring his right leg and injuring his neck and back. Plaintiff alleges that "Defendants" denied him pain medication, delayed an MRI and a visit with an outside doctor, and denied Plaintiff a brace and crutches at certain unspecified times. Plaintiff further alleges

8

that these denials caused his leg injury to worsen, ultimately resulting in the need for surgery on February 29, 2012, after Plaintiff was released from custody. Based on these facts, Plaintiff alleges that "Defendants" were deliberately indifferent toward Plaintiff's serious medical needs in violation of his Eighth Amendment rights.[5] Defendants have filed various Motions to Dismiss challenging the legal and factual sufficiency of Plaintiff's Complaint.

Where a plaintiff has filed its pleadings *pro se*, courts must construe such pleadings, "however unskillfully pleaded," liberally. Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994) (citing Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 595-96, 30 L. Ed. 2d 652 (1972)). However, in order to survive a Motion to Dismiss, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 1965, 1974, 167 L. Ed. 2d 929 (2007). In evaluating a § 1983 claim for deliberate indifference to a serious

---

[5] In his present Complaint, Plaintiff cites to documents that he previously filed in case number 1:11-CV-1109, including a complaint and certain attachments, and asks the Court to consider those filings in the present case. The Court notes that the complaint and accompanying documents filed in case number 1:11-CV-1109 contain essentially the same claims against the same defendants as in the present case. The Court further notes, however, that the Court *sua sponte* dismissed case number 1:11-CV-1109 without prejudice to Plaintiff refiling his complaint on the proper forms in a separate action. Following the dismissal of case number 1:11-CV1109, Plaintiff filed his Complaint in the present case. In doing so, however, Plaintiff did not attach any documents previously-filed in case number 1:11-CV-1109. Therefore, Defendants in the present case were never properly served with any such documents. Moreover, it appears that Defendants were never served with those same documents in case number 1:11-CV-1109, since that case was dismissed *sua sponte* prior to the issuance of any summons. As such, any documents filed in case number 1:11-CV-1109, which are not also filed in the present case, including Plaintiff's previously-filed complaint, are not properly before the Court for review. Thus, the Court will not consider those documents in the course of addressing Defendants' Motions to Dismiss.

medical need, courts first look to whether the plaintiff has alleged the existence of a serious medical need. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Wynn v. Mundo, 367 F. Supp. 2d 832, 838 (M.D.N.C. 2005) (quoting Creech v. Nguyen, 153 F.3d 719, 1998 WL 486534, at *5 (4th Cir. 1998)), aff'd, 142 Fed. Appx. 193 (4th Cir. 2005). If a plaintiff has sufficiently alleged the existence of a serious medical need, courts then turn to whether the plaintiff has alleged that the defendant's response to that serious medical need amounted to deliberate indifference.

To the extent that a plaintiff asserts claims that health care providers acted with deliberate indifference to the plaintiff's serious medical need, "the treatment [alleged] must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Wynn, 367 F. Supp. 2d at 837 (citing Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). In addition, to the extent that a plaintiff asserts claims of deliberate indifference to a serious medical need against non-medical prison personnel, that plaintiff must sufficiently allege that such personnel knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994); Wynn, 367 F. Supp. 2d at 837 (noting that § 1983 liability may exist upon a showing that prison personnel "intentionally delay[ed] or den[ied] an inmate's access to medical care or

10

intentionally interfer[ed] with prescribed treatment"). However, allegations amounting to mere negligence or malpractice are not sufficient to sustain a claim a deliberate indifference in violation of the Eighth Amendment. Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990), overruled in part on other grounds by Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

In addition, to the extent that a plaintiff asserts any claims against individual defendants in their supervisory capacity, such claims cannot be sustained if predicated solely on the theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). In other words, "[i]t is insufficient merely to show deliberate indifference to a serious medical need on the part of the subordinate" medical or other prison personnel. Miltier, 896 F.2d at 854. Rather, to sustain a claim for supervisory liability under § 1983, a plaintiff must sufficiently allege "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices;' and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). Based on these standards, the Court will address Defendants' various Motions to Dismiss.[6]

---

[6] As noted above, Plaintiff has failed to respond to Defendants' Motions to Dismiss. Under Local Rule 7.3, "[i]f a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will

A.  Motions to Dismiss Plaintiff's § 1983 Claims

Defendants Andrews and Couch and Defendants Butler and Mensah have filed separate Motions to Dismiss Plaintiff's § 1983 claims [Doc. #20 & #22, respectively] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In considering those Motions to Dismiss, the Court finds at the first step of the deliberate indifference analysis that Plaintiff has failed to allege the existence of a serious medical need prior to Plaintiff's November 17, 2011, fall down the stairs. In that regard, the Court notes that Plaintiff merely alleges that he entered the Durham County Detention Center with a pre-existing leg injury that allegedly required some degree of accommodation, allegedly including an extra blanket to elevate his leg, a low bunk, and a low-tier cell assignment. Plaintiff makes no allegations, however, regarding pain, immobility, or any other factor related to his preexisting injury such that the Court could infer the existence of a serious medical need prior to Plaintiff's fall on November 17, 2011. As such, to the extent that Plaintiff alleges that any Defendant acted with deliberate indifference with regard to Plaintiff's preexisting leg injury, as it allegedly presented prior to Plaintiff's fall on November 17, 2011, such a claim fails for want of a serious medical need.

However, the Court finds that Plaintiff has sufficiently alleged the existence of a serious medical need following his fall down the stairs on November 17, 2011. In that regard, the Court notes that Plaintiff alleges that when he fell down the stairs, he re-injured his leg, suffering a torn femur muscle, which caused Plaintiff "continued pain" and a "deformed leg," and

---

be granted without further notice." L.R. 7.3(k). Therefore, the Court could, in its discretion, grant Defendants' Motions to Dismiss without further discussion. However, as set forth below, the Court will undertake a review of Plaintiff's Complaint under the relevant standards.

ultimately required surgery.  See Hunt v. Sandhir, 295 Fed. Appx. 584, 586, 2008 WL 4442159, at *1 (4th Cir. 2008) (unpublished) (finding that the plaintiff had sufficiently alleged that he suffered from a serious medical condition in the form of a fractured elbow).  The Court finds that these facts sufficiently allege the existence of a serious medical need following Plaintiff's fall down the stairs on November 17, 2011.  Therefore, having resolved the question of whether Plaintiff has alleged the existence of a serious medical need, the Court turns to whether Plaintiff has sufficiently alleged that the response to his serious medical need on or after his fall on November 17, 2011, by either Defendant Andrews, Couch, Butler, or Mensah, amounted to deliberate indifference.

An examination of the "Statement of Claim" within Plaintiff's Complaint reveals that Plaintiff does not reference by name any of the Defendants in this case.  In fact, the only mention of Defendants Andrews, Couch, Butler, and Mensah by name occurs in the list of the parties.  Even considering the facts set forth in Plaintiff's various Motions, discussed above, the Court notes that Plaintiff does not allege any specific action or inaction by any of the named Defendants.  Rather, Plaintiff merely references the "negligence" or "deliberate indifference" of "Defendants," generally, or of unnamed medical or other prison personnel or "administration."  Plaintiff makes no allegations about what any of the Defendants knew at the time relevant to Plaintiff's alleged injury or how the Defendants responded to whatever knowledge they may have had at that time.  As such, with regard to Defendants Butler and Mensah, who appear to be health care providers in some capacity, the Court finds that Plaintiff has failed to allege any facts from which the Court could infer that either Defendant Butler or

13

Case 1:12-cv-00154-JAB-JLW   Document 64   Filed 03/14/13   Page 13 of 19

Mensah, themselves, provided *any* treatment to Plaintiff following his fall down the stairs on November 17, 2011, much less treatment that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Furthermore, with regard to Defendants Andrews and Couch, who appear to be non-medical prison personnel, the Court finds that Plaintiff has failed to allege any facts from which the Court could infer that Defendants Andrews and Couch, themselves, knew of and disregarded an excessive risk to Plaintiff's health or safety following Plaintiff's fall down the stairs on November 17, 2011. As such, the Court concludes that Plaintiff has failed to state a § 1983 claim for deliberate indifference against Defendants Andrews, Couch, Butler, and Mensah based on any personal involvement with Plaintiff's alleged treatment in this case.

Furthermore, to the extent that Plaintiff asserts § 1983 claims against Defendants Andrews, Couch, Butler, and Mensah in their supervisory capacities, the Court concludes that Plaintiff has failed to state a claim in that regard as well. In so concluding, the Court notes that Plaintiff has failed to allege any facts from which the Court could infer that, following Plaintiff's fall down the stairs on November 17, 2011, (1) the supervisory Defendants had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff; (2) the supervisory Defendants' responses to that knowledge were so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisory Defendants' inaction and the particular constitutional injury suffered by Plaintiff. Even assuming, *arguendo*, that Plaintiff has sufficiently alleged facts consistent with

14

negligence or deliberate indifference by subordinate personnel, such allegations would still not provide a sufficient basis for maintaining a claim against Defendants Andrews, Couch, Butler, and Mensah in their supervisory capacity. Miltier, 896 F.2d at 854 (finding that "it is insufficient merely to show deliberate indifference to a serious medical need on the part of the subordinate" medical or other prison personnel). At best, Plaintiff's Complaint does no more than speculate regarding whether and to what extent any of Defendants Andrews, Couch, Butler, and Mensah, either personally or in their supervisory capacities, acted or failed to act in a deliberately indifferent manner following Plaintiff's fall down the stairs on November 17, 2011. Such speculation does not meet the threshold for surviving a Motion to Dismiss, as set forth in Twombly. Therefore, the Court concludes that Plaintiff has failed to state a § 1983 claim against any of Defendants Andrews, Couch, Butler, and Mensah.[7] As such, the Court will grant the Motions to Dismiss filed by Defendants Andrews and Couch [Doc. #20] and Defendants Butler and Mensah [Doc. #22].

B.  Motion to Dismiss Plaintiff's Medical Malpractice Claims

In addition to filing a Motion to Dismiss Plaintiff's § 1983 claims, Defendants Butler and Mensah have filed a Second Motion to Dismiss [Doc. #26] any claim for medical malpractice

---

[7] The Court notes that Defendants Andrews and Couch also file their Motion to Dismiss pursuant to Rule 12(b)(1) & (2) based on various immunity defenses. However, because the Court finds that Plaintiff has failed to state a claim upon which relief can be granted, and will, therefore, dismiss Plaintiff's § 1983 pursuant to Rule 12(b)(6), the Court need not address the immunity issues.

under North Carolina law.[8] Defendants Butler and Mensah contend that such a claim should be dismissed for failure to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. Rule 9(j) states as follows:

> Any complaint alleging medical malpractice by a health care provider pursuant to [North Carolina law] in failing to comply with the applicable standard of care under [North Carolina law] shall be dismissed unless:
> (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
> (2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. Gen Stat. § 1A-1, Rule 9(j). "Failure to comply with Rule 9(j) is ground for dismissal of a state law medical malpractice claim filed in federal court." Davis v. Jones, No. 5:12-cv-143-RJC, 2012 WL 4959497, at *4 (W.D.N.C. Oct. 16, 2012) (citing Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004)). Furthermore, a plaintiff's "status as a prisoner does not excuse his failure to comply with Rule 9(j)'s pre-filing certification requirements. Id. In the present case, Defendants Butler and

---

[8] To the extent that Plaintiff asserts a medical malpractice claim in this case, such claim could not be asserted against Defendants Andrews or Couch, as those Defendants are not health care providers, as defined by North Carolina law. See N.C. Gen. Stat. 90-21.11.

Mensah correctly note that Plaintiff has failed to comply with the requirements of Rule 9(j), as set forth above, in any respect. Therefore, to the extent that Plaintiff asserts a medical malpractice claim under North Carolina law, the Court will grant the Second Motion to Dismiss [Doc. #26] filed by Defendants Butler and Mensah.

    C.    <u>Motion to Dismiss Plaintiff's "Amended Complaint" filed by Defendants Butler and Mensah [Doc. #55]</u>

Defendants Butler and Mensah have also filed a Motion to Dismiss [Doc. #55] in response to what they have perceived to be an amended complaint filed by Plaintiff on December 14, 2012. Based on a review of Plaintiff's filings on December 14, 2012 particularly Documents 40 and 43, the Court notes that although Plaintiff includes the words "amended complaint" in the caption of those documents, the substance of the documents and the relief sought simply mirrors Plaintiff's previous Motions for the appointment of counsel and for the extension of time to respond to Defendants' Motions to Dismiss. For example, in Document number 43, which includes the words "amended complaint" at the top, Plaintiff merely reiterates his contentions regarding his excusable neglect in failing to file a Response to Defendants' Motions to Dismiss, and then asks the Court to "Grant Cause of Action/Complaint filed on February 14, 2012," which is the date of Plaintiff's Complaint in this case. (Pl.'s Filing at 6, [Doc. #43]). Therefore, the Court will not construe any of Plaintiff's filings on December 14, 2012, as an amended complaint.[9] As such, Defendants Butler and

---

[9] Moreover, for the reasons set forth in Part II of this Memorandum Opinion and Order, the Court will not construe any of Plaintiff's filings on December 14, 2012, as a timely filed Response to any of Defendants' Motions to Dismiss.

Mensah were not required to answer or otherwise proceed as though Plaintiff had filed an amended complaint on December 14, 2012. Thus, the Court will deny as moot the Motion to Dismiss [Doc. #55] Plaintiff's purported "amended complaint" filed by Defendants Butler and Mensah.

IV. CONCLUSION

For the reasons set forth above, the Court will deny Plaintiff's Motion for the Appointment of Counsel [Doc. #17] and will further deny each of Plaintiff's subsequently-filed Motions for various relief [Doc. #29, #30, #31, #32, & #35]. Furthermore, the Court will grant the Motion to Dismiss [Doc. #20] filed by Defendants Andrews and Couch and the First and Second Motions to Dismiss [Doc. #22 & #26] filed by Defendants Butler and Mensah. In addition, the Court will deny as moot the Motion to Dismiss [Doc. #55] Plaintiff's purported "amended complaint" filed by Defendants Butler and Mensah. As a result, the Court will dismiss this case with prejudice, and all remaining Motions [Doc. #44, #47, #51, #57, & #60] filed by any of the parties in this case will be rendered moot.

IT IS THEREFORE ORDERED that Plaintiff's Motion for the Appointment of Counsel [Doc. #17] is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motions [Doc. #29, #30, #31, #32, & #35] for various relief are hereby DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss [Doc. #20] filed by Defendants Andrews and Couch is hereby GRANTED as set forth herein.

IT IS FURTHER ORDERED that both the First and Second Motions to Dismiss [Doc.

#22 & #26] filed by Defendants Butler and Mensah are hereby GRANTED as set forth herein.

IT IS FURTHER ORDERED that the Motion to Dismiss [Doc. #55] Plaintiff's purported "amended complaint" filed by Defendants Butler and Mensah is hereby DENIED as MOOT.

FINALLY, IT IS ORDERED that this case is hereby DISMISSED WITH PREJUDICE, and all remaining Motions [Doc. #44, #47, #51, #57, & #60] filed by any of the parties in this case are hereby rendered MOOT. A Judgment will be filed contemporaneously herewith.

This the 14th day of March, 2013.

／s／ James A. Beaty
United States District Judge